**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | **Criminal No.  GLR-13-0394** |
| **DEVIN JONES** | * | |

**MOTION TO SUPPRESS TANGIBLE EVIDENCE SEIZED
FROM 3808 W. ROGERS AVENUE AND 1246 N. AUGUSTA AVENUE,
MOTION FOR A <u>FRANKS</u> HEARING, AND MOTION TO SUPPRESS STATEMENTS**

The defendant, Devin Jones, through his attorneys, hereby moves to exclude from evidence at trial any items seized from the residences located at 3808 West Rogers Avenue, Third Floor, Baltimore, Maryland and 1246 North Augusta Avenue, Baltimore, Maryland; moves for a <u>Franks</u> hearing on the search warrant; and moves to suppress Mr. Jones's custodial statements to police officers.  This motion replaces the motions to suppress that were previously filed in this case.  <u>See</u> Dkt. Nos. 17 & 18.  For the reasons stated below, Mr. Jones respectfully requests that the Court grant the motions to suppress, or in the alternative, schedule a <u>Franks</u> hearing on the validity of the search warrant.

**Background**

Devin Jones is charged in a superseding indictment with possession of a controlled dangerous substances with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1); maintaining a drug-involved premise, in violation of 21 U.S.C. § 856(a)(1); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1).

On May 9, 2012, police officers in possession of a search warrant signed by the Honorable Jack Lesser of the District Court for the City of Baltimore seized, among other things,

two firearms from a residence located on the Third Floor of 3808 West Rogers Avenue in

Baltimore, Maryland.  On the same day, officers seized, without a warrant, CDS from the

residence located at 1246 N. Augusta Avenue, Baltimore, Maryland.  Both of these searches and

seizures violated the Fourth Amendment to the United States Constitution.

**Argument**

I.     **The Search Warrant for 3808 West Rogers Avenue Did Not Establish Probable Cause to Believe the Home Contained Evidence of a Crime.**

The search of 3808 West Rogers Avenue violated the Fourth Amendment to the United

States Constitution, because the affidavit underlying the warrant did not establish probable cause

to believe evidence of a crime would be found at the location.  See Doe v. Broderick, 225 F.3d

440, 451 (4th Cir. 2000) ("The fundamental constitutional principle that search warrants must be

founded upon probable cause derives from the language of the Fourth Amendment itself, which

provides that 'no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be

seized.'"); Illinois v. Gates, 462 U.S. 213, 238 (1983) (officer seeking issuance of search warrant

must present affidavit containing facts sufficient to "provide the magistrate with a substantial

basis for determining the existence of probable cause;" probable cause requirement demands that

officer demonstrate "fair probability" that evidence of crime will be found at particular place);

Brinegar v. United States, 338 U.S. 160, 175 (1949) (probable cause means "more than bare

suspicion").

"In determining whether a search warrant is supported by probable cause, the crucial

element is not whether the target of the search is suspected of a crime, but whether it is

2

reasonable to believe that the items to be seized will be found in the place to be searched."

United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993) (quoting Zurcher v. Stanford Daily, 436 U.S. 547, 556 & n. 6 (1978)).

**A.    There is No Nexus Between West Rogers Avenue and Alleged Drug Activity.**

The affidavit upon which the search warrant was based does not establish probable cause to believe evidence of a crime could be found at 3808 West Rogers Avenue.  See Exhibit A (May 4, 2012, Search Warrant and Affidavit in Support of the Application for Search Warrant for 3808 West Rogers Avenue, Third Floor).[1]  The facts proffered in the affidavit focus on alleged narcotics distribution in late April 2012 in the 1200 block of Augusta Avenue and the nearby 4100 block of Mountwood Road in Baltimore.  See id. ¶¶ 2-5.  The affiant, Detective Ramon Lugo, states that he received "anonymous information of illegal narcotic activity in and around the 1200 block of N. Augusta Avenue."  Id. ¶ 2.  The affiant claims he watched Mr. Jones engage in narcotics sales near 1246 N. Augusta Avenue.  Id. ¶¶ 2-4.  The affiant alleges that Mr. Jones was storing and retrieving narcotics from the front step area of that address.  Id.  It is further alleged that after conducting the hand-to-hand transactions, Mr. Jones periodically would go into 4148 Mountwood Road, which is less than a block from 1246 N. Augusta.  Id. ¶¶ 2,3.

The affidavit identifies no reason to believe that the location searched – 3808 West Rogers Avenue – was connected to the narcotics distribution that the affiant allegedly witnessed near 1246 N. Augusta.  The two locations are separated by six miles.  The allegations regarding

---

[1]      In the attached search warrant affidavit, counsel has inserted numbers next to the paragraphs in the "Probable Cause" section (pp. 8-10 of the affidavit).  This was done solely for ease of reference and solely for purposes of this motion.  Citations to paragraphs in the affidavit refer to the numbered paragraphs in the "Probable Cause" section.

3808 West Rogers Avenue are bare.  With respect to that address, the affiant states that, on one

occasion during the fourth week of April 2012, he saw Mr. Jones drive his car from 9 Walden

Birch Court (where there is no evidence of illegal drug activity and no connection to 1246 N.

Augusta or 4148 Mountwood) to 3808 West Rogers Avenue.  Id. ¶ 4.  The affiant says

approximately one hour later, Mr. Jones left 3808 West Rogers Avenue and drove to the 1200

block of N. Augusta Avenue where he allegedly engaged in narcotics distribution.  Id.  The

affiant also states that on another occasion during the same week, he saw Mr. Jones leave 3808

West Rogers Avenue at night time, travel to 9 Walden Birch Court, stay for 30 minutes, and

drive to the 4100 block of Mountwood Road "repeating his actions as before."  Id. ¶ 5.[2]

        The affiant does not allege that he witnessed any illegal activity in or near 3808

West Rogers Avenue.  He does not describe the circumstances that might have led him to believe

that evidence of criminal activity was likely to be stored at 3808 West Rogers.  No doubt

recognizing that evidentiary deficiency, the affiant falsely represents his observations regarding

3808 West Rogers Avenue.  In his conclusion, he makes the following summary statement,

which is not true:  "The location of 3808 W. Rogers Avenue is where I saw Mr. Jones go to on

---

        [2]        There is absolutely no nefarious connection between Mr. Jones and 9 Walden
Birch Court.  In fact, the resident of 9 Walden Birch Court, Ms. Yudith Tyson, was Mr. Jones's
hairstylist.  See Exhibit B ¶ 4 (William Kanwisher Affidavit).  Detective Lugo referred to Ms.
Tyson in the affidavit, and he represented to the Court in the affidavit that Mr. Jones was
"bringing proceeds" to 9 Walden Birch Court.  See Exhibit A, ¶¶ 5, 6.  There was absolutely no
evidentiary support for that conclusion.  Nonetheless, Detective Lugo was able to secure a search
warrant for 9 Walden Birch Court, Ms. Tyson's home, based on the same bare allegations in the
affidavit supporting a search warrant application for 3808 West Rogers.  At about the same time
police searched 3808 West Rogers, armed police officers executed a search and seizure warrant
at Ms. Tyson's home at 9 Walden Birch Court.  They searched her home thoroughly and found
no evidence of criminal activity.  See Exhibit B ¶ 5.  Ms. Tyson's relationship with Mr. Jones
was not personal; she was simply his hairstylist.  Id. ¶ 4.

several occasions and then go directly to the 4100 block of Mountwood and conduct illegal narcotics sales." Exhibit A ¶ 6 (emphasis added). That statement is false. It was made to mislead the judge reviewing the affidavit to believe there was a nexus between the observed illegal activity at 1246 N. Augusta and 3808 West Rogers Avenue. In actuality, the affiant reports seeing Mr. Jones "go to" 3808 West Rogers Avenue one time, not "on several occasions," and the affiant reports seeing Mr. Jones drive from 3808 West Rogers to the Mountwood/N. Augusta area one time, not "on several occasions." Those alleged observations fail to establish any connection between the illegal drug activity allegedly witnessed on the 1200 block of N. Augusta and the home located at 3808 West Rogers Avenue.

In addition, the affidavit fails to establish that Mr. Jones lived or stayed at 3808 West Rogers Avenue. The affiant states that he saw Mr. Jones enter 3808 West Rogers Avenue on one occasion and stay there for approximately one hour. See id. ¶ 4. The affiant also states that later in the same week, he saw Mr. Jones leave 3808 West Rogers Avenue in the evening. Id. ¶ 5. The affiant offers that the BGE subscriber to the Third Floor of 3808 West Rogers is Deborah Jones, Mr. Jones's mother, but there is no evidence that Mr. Jones lived at that location. Grasping for a reason to search 3808 West Rogers, the affiant draws the unsupported conclusion that Mr. Jones was storing illegal narcotics at the home. But the facts presented to Judge Lesser indicate it is more likely that Mr. Jones was simply visiting his mother on the two occasions Detective Lugo claims he saw him at the location.

In sum, the statements in the search warrant affidavit fall significantly short of establishing a "fair probability" that evidence of a crime would be found at 3808 West Rogers Avenue. See, e.g., Lalor, 996 F.2d at 1583 (affirming district court finding no nexus between

home searched and alleged drug-dealing).

**B.    The Search Warrant Was Based on Illegally Seized Evidence.**

The search warrant suffers from another fatal defect:  any probable cause determination was based on illegally seized evidence, namely the CDS seized from the front steps of 1246 N. Augusta.  If the illegally seized evidence is excised from the affidavit, there is no probable cause to believe evidence of a crime would be found at 3808 West Rogers Avenue.  See, e.g, Simmons v. Poe, 47 F.3d 1370, 1378 (4th Cir. 1995) (observing that inclusion of illegal evidence in affidavit may taint entire warrant if warrant is not otherwise properly supported by probable cause); United States v. David, 943 F. Supp. 1403, 1415 (E.D. Va. 1996) (excising tainted portion of affidavit and conducting probable cause analysis without it).

**1.    The Search and Seizure at 1246 N. Augusta Was Illegal.**

According to his affidavit, Detective Lugo "directed P.O. Rosier to the front steps of 1246 N. Augusta Ave in which he recovered a clear sandwich containing (4) clear zip lock bags containing tan powder substance of suspected heroin, (5) clear zip lock bags containing white rock substance of suspected cocaine and (3) purple zip lock bags containing white rock substance of suspected cocaine." Id. ¶ 4.  To retrieve these items, Officer Rosier entered the private property of 1246 N. Augusta Avenue, and he did so without a warrant.  As the attached pictures of 1246 N. Augusta indicate, the front steps from which the items were recovered are part of the home.  See Exhibit C (pictures of 1246 N. Augusta Avenue; home with green awning).

When "the Government obtains information by physically intruding on persons, houses, papers, or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred." Florida v. Jardines, 133 S. Ct. 1309, --- U.S. ---, (2013) (quoting United

States v. Jones, 565 U.S. ---, ---, n. 3, 132 S.Ct. 945, 950-951, n. 3, (2012)) (internal quotations omitted).  In Florida v. Jardines, the Supreme Court recently held that the front porch of a home is "the classic exemplar of an area adjacent to the home and to which the activity of home life extends," and as such, it is "part of the home itself for Fourth Amendment purposes."  Id. at 1414 & 1415 (quotations and citations omitted).  Here, as in Jardines, the front steps leading to the front porch are part of the area "immediately surrounding and associated with the home" and are part of the home for Fourth Amendment purposes.  Id. at 1414.

The Supreme Court in Jardines also held that a police officer may have an implied license to go onto the front porch for the purpose of knocking on the front door – just like a citizen-visitor, such as a girl scout.  Id. at 1415.  However, the Court held that whether a police officer has an implied license to enter the front porch area of a home "depends upon the purpose for which [the police] entered."  Id. at 1417.  In Jardines, the police brought a dog to sniff the front porch area for drugs, and the Supreme Court held that "their behavior objectively reveal[ed] a purpose to conduct a search, which is not what anyone would think he had license to do."  Id.

Here, as in Jardines, the purpose of Officer Rosier's entry onto the property was to conduct a search.  According to the KGA recording – which is a contemporaneous recording of the police officers' activities that day – Detective Lugo (the affiant) wanted to "check out the stash location" at 1246 N. Augusta.  See Exhibit D, Track 2, at 1:08 - 1:11 (KGA recording from April 24, 2012).[3]  Detective Lugo directed Officer Rosier to "walk the walkway" of 1246 N.

---

[3]      According to an incident report produced in discovery, the illegal seizure of narcotics from 1246 N. Augusta Avenue, as described in paragraph 4 of the affidavit's Probable Cause section, occurred on April 24, 2012.  See Exhibit E (April 24, 2012, Incident Report concerning seizure of narcotics from 1246 N. Augusta Avenue).  The KGA related to this complaint number and incident was requested by the defense and produced by the Baltimore City

Augusta and "check around the bottom step." Id. at Track 4.  Following that direction, Officer

Rosier walked the walkway, searched the front step area, and reported "I got it." Id. at Track 5.

Officer Rosier then asked Detective. Lugo, "You want me to look hard.  Is it just one you're

looking for or what?" Id.  Detective Lugo responded, "Hey listen, the more the merrier. . . Check

around the steps pretty good." Id.  Based on these recorded statements, it is clear that the officers

were not invited onto the property; that the purpose of their presence was to search the front step

area for narcotics; and that they did not care whether they violated the privacy rights of the

residents. They, therefore, were not lawfully present on the property, and the warrantless seizure

of narcotics from the property violated the Fourth Amendment.

### 2.    Excising the Illegally Seized Narcotics from the Affidavit Defeats Probable Cause.

If the Court excises the allegation in paragraph 4 of the affidavit's "Probable Cause"

section that narcotics were seized from the front porch of 1246 N. Augusta, the remainder of the

affidavit fails to establish probable cause to search 3808 West Rogers.  The illegally seized

narcotics are the only narcotics that the affiant claims were actually recovered by police.  The

remaining allegations of illegal narcotics sales are based solely on the affiant's uncorroborated

observations.  Moreover, paragraph 4 is the only paragraph that contains an allegation that Mr.

Jones went directly from 3808 West Rogers Avenue to the 1200 block of N. Augusta and

engaged in a hand-to-hand transaction.  If all that remains in paragraph 4 is the officer's alleged

observations, the already tenuous and limited connection between 3808 West Rogers and 1246

N. Augusta becomes even more distant.  Without the illegally seized narcotics, there is no

---

Police Department.  It is attached as Exhibit D.

probable cause to support the warrant.

**C.    The <u>Leon</u> Good Faith Exception Cannot Save the Search.**

The affidavit was so deficient with respect to 3808 West Rogers Avenue that no objectively reasonable officer would have relied in good faith on the legality of the search warrant.  <u>See</u> <u>United States v. Leon</u>, 468 U.S. 897, 923 (1984) (when warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" it cannot be relied upon in good faith) (quotation omitted).

The good faith exception is especially unavailable in this case, because the affiant, Detective Lugo, knew, but failed to disclose to the judge considering the warrant application, that Mr. Jones's family lives at 1246 N. Augusta Avenue and that 1246 N. Augusta is the home address listed on Mr. Jones's driver's license.  Just 18 months before the alleged observations in this case, Detective Lugo had arrested Mr. Jones near 1246 N. Augusta, and Detective Lugo knew at that time that Mr. Jones's address was 1246 N. Augusta.  <u>See</u> Exhibit F (Oct. 16, 2010, Statement of Probable Cause filed by Det. Lugo against Devin Jones, listing Mr. Jones's address as 1246 N. Augusta Avenue).  Indeed, a routine MVA inquiry would have confirmed that 1246 N. Augusta was, in fact, the address listed on his driver's license.  If Detective Lugo had disclosed that 1246 N. Augusta was Mr. Jones's legal address, the judge considering the search warrant application would have concluded that it was more likely that Mr. Jones stored narcotics at 1246 N. Augusta as opposed to 3808 West Rogers.  As it turned out, Detective Lugo intentionally misled the Court into believing there was a connection between the illegal drug activity and 3808 West Rogers, because he wanted to search as many homes as possible that were remotely, even if innocently, associated with Mr. Jones.

9

Because the affidavit failed to establish probable cause to believe that evidence of the crime would be found at 3808 West Rogers Avenue, the evidence seized pursuant to the search warrant for that home must be suppressed.

## II.   Mr. Jones is Entitled to a <u>Franks</u> Hearing Because the Affidavit Contained Two Materially False Statements.

Detective Lugo knowingly and intentionally, or with reckless disregard for the truth, made two materially false statements in the affidavit, without either of which there is no probable cause.  For the reasons discussed below, Mr. Jones is entitled to a <u>Franks</u> hearing on the validity of the search warrant.

In <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), the Supreme Court held that "under limited and carefully circumscribed circumstances, a defendant may challenge an affidavit offered to procure a search warrant against the defendant."  <u>United States v. Tate</u>, 524 F.3d 449, 454 (4th Cir. 2008).  The Supreme Court in <u>Franks</u> articulated the right as follows:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.  In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

<u>Franks</u>, 438 U.S. at 155-56.  In order for a defendant to be entitled to a <u>Franks</u> hearing, he must make "a substantial preliminary showing" that the affiant included a "false statement knowingly and intentionally, or with reckless disregard for the truth," that "when included would defeat a

Case 1:13-cr-00394-GLR   Document 36   Filed 12/24/13   Page 11 of 17

probable cause showing." <u>Tate</u>, 524 F.3d at 455.  A substantial preliminary showing must

include a detailed "offer of proof."  <u>Id.</u> (internal citations omitted).  Mr. Jones has attached and

provide a detailed offer of proof.

> **A.      Detective Lugo Falsely Stated That He Called for An Arrest Team and Gave a Description of Mr. Jones and a Volkswagen.**

Detective Lugo falsely represented in his affidavit that he provided fellow police officers

with a description of Mr. Jones and a vehicle after he allegedly witnessed Mr. Jones sell drugs to

the car's driver.  Specifically, in paragraph 5 of the affidavit, Detective Lugo describes observing

an alleged hand-to-hand transaction between Mr. Jones and a black male driver of a Volkswagen

in front of 1246 N. Augusta Avenue.  <u>See</u> Exhibit A, ¶ 4.  He then states: "At this time I called

for the arrest team and gave them a description of the Volkswagen and Mr. Jones.  As the arrest

team arrived closer the Volkswagen had left the area and Mr. Jones walked into the first floor

right apartment of 4148 Mountwood Road."  <u>Id.</u>  Those statements are false, and Detective Lugo

made them intentionally and knowingly, or with reckless disregard for the truth.

According to the KGA, Detective Lugo did not provide a description of Mr. Jones or the

Volkswagen that Detective Lugo supposedly observed engage in a drug sale.  In fact, there is no

mention of Mr. Jones by name, and there is no description of his age, race, height, build, or

clothing.  There is simply no reference to him at all.  Nor is there any mention of a Volkswagen.

If one accepts Detective Lugo's statements in his affidavit as true, one would expect to hear a

description of the alleged narcotics sale, a description of Devin Jones, and a description of the

Volkswagen (including the license plate number).[4]  Contrary to the sworn statements in the

---

[4]      Detective Lugo included the license plate number of the vehicle driven by Ms. Tyson, <u>see</u> Exhibit A ¶ 5, indicating that he understands that providing such details to

11

affidavit, no such descriptions were provided.

Detective Lugo's sworn statement that "[a]s the arrest team arrived closer the Volkswagen had left the area and Mr. Jones walked into the first floor right apartment of 4148 Mountwood Road" was also false. If it were true, one would expect to hear Detective Lugo state on the KGA that the Volkswagen left or that Mr. Jones went into 4148 Mountwood. No such statements are on the contemporaneous recording. Indeed, the KGA contains no reference to the Volkswagen or Mr. Jones leaving the area. If that had actually happened as Detective Lugo claims it did, statements supporting those alleged observations would be on the KGA. They are not.

These false statements completely undermine the veracity of the affiant. Detective Lugo claims he observed Mr. Jones engage in a hand-to-hand transaction with the driver of a Volkswagen, but the KGA does not support that claim. He claims that he wanted to arrest Mr. Jones, but Mr. Jones and the Volkswagen left the area before the arrest team arrived. The KGA does not support that claim either. In fact, the KGA reveals that Detective Lugo never intended to arrest the person he allegedly saw deal drugs. On the KGA, Detective Lugo – in response to an officer telling him that he is on his way  – states: "Alright, no rush, I just wanted to check out the stash location." See Exhibit D, Track 2, at 1:08 - 1:11 (KGA recording from April 24, 2012). He then proceeds to direct Officer Rosier to 1246 N. Augusta to seize narcotics from the front steps. If Detective Lugo really wanted to arrest someone, one would hear some sense of urgency on the KGA or some statement that the target was no longer in sight. But the KGA reveals that Detective Lugo's sole purpose in calling for other police officers was to "check out the stash

corroborate his observations bolsters his credibility and is important to a probable cause finding.

location," not to arrest Mr. Jones or the Volkswagen driver, as alleged in the affidavit.  In fact, given the absence of any description of Mr. Jones or the Volkswagen on the KGA, the Court cannot have any confidence that Detective Lugo actually observed Mr. Jones engage in a drug transaction.  The KGA recording does not support Detective Lugo's story, and it casts considerable doubt over Detective Lugo's claim that he saw Devin Jones distribute narcotics that day.[5]

Based on these materially false statements, made knowingly and intentionally or with reckless disregard for the truth, Mr. Jones has made a substantial preliminary showing that entitles him to a <u>Franks</u> hearing on the validity of the search warrant.

> **B.     The Affiant Falsely Stated That He Observed Mr. Jones Go To West Rogers "On Several Occasions" and "Then Go Directly" to 4100 Block of Mountwood and Conduct Illegal Narcotics Sales.**

As discussed above, Detective Lugo knowingly and intentionally, or with reckless disregard for the truth, made the false statement that he saw Mr. Jones go to 3808 West Rogers Avenue "<u>on several occasions</u> and then go directly to the 4100 block of Mountwood and conduct illegal narcotics sales."  Exhibit A ¶ 6 (emphasis added).  That statement is patently false, and it was made intentionally and knowingly, or with reckless disregard for the truth, and it misled the Court into issuing the search warrant.  When the affidavit is read carefully, it is clear that the

---

[5]     The KGA indicates that other individuals were in the area that day, any one of whom could have been the person dealing drugs.  For instance, Detective Lugo directs an officer to "clear an area," which means the officer should tell individuals to leave.  Another police officer instructs his colleague to "nonchalantly kinda FI" (field interview) someone in the area with a "grey hoodie and black vest on" and tell him to call "somebody."  <u>See</u> Exhibit D, Track 7, :08-:35.  This clearly indicates that the person is a police informant.  These statements indicate that other people were in the area, and they, not Mr. Jones, could have engaged in the drug transaction Detective Lugo says he observed.

affiant reports seeing Mr. Jones go to 3808 West Rogers <u>only one time</u>, not "on several occasions."  And it is also clear that the affiant reports seeing Mr. Jones drive from 3808 West Rogers to the Mountwood/N. Augusta area <u>only one time</u>, not "on several occasions."  This false statement – that the affiant saw Mr. Jones go to West Rogers "on several occasions and then go directly to the 4100 block of Mountwood and conduct illegal narcotics sales" – was material to the finding of probable cause, because it was the <u>only</u> proffered connection between alleged narcotics sales in the Mountwood/North Augusta area and the West Rogers home.  Based on that materially false statement, Mr. Jones has made a substantial preliminary showing that entitles him to a <u>Franks</u> hearing.

Each of these false statement merits a <u>Franks</u> hearing on its own.  However, when the false statements are viewed collectively, the Court should determine that Mr. Jones has made a substantial preliminary showing that justifies a <u>Franks</u> hearing.

**III.   The Evidence Seized Without A Warrant from 1246 N. Augusta Avenue Should Be Suppressed.**

According to the Statement of Probable Cause, on the same day police executed a search and seizure warrant at 3808 West Rogers Avenue, they seized narcotics located on the front steps of 1246 N. Augusta Avenue.  They did not have a warrant to seize any evidence from that location.  The Statement of Probable Cause states that Detective Lugo directed Sergeant Young "to the front of 1246 N. Augusta Ave to the front steps and Sgt. Young then recovered from a cut hole in the carpet second step . . . a clear plastic bag containing sixty (60) orange zip lock bags containing white rock substance of suspected cocaine."  The Statement of Probable Cause also states that " Detective Friend recovered off the first step under the railing" many zip lock bags

containing heroin and cocaine.  Because no search warrant was procured for 1246 N. Augusta, these items were illegally seized from that property, and they should be excluded from evidence.

**IV.    The Custodial Statements Mr. Jones Made on the Day of His Arrest and the Illegal Search and Seizure Should be Suppressed Under the Fruit of the Poisonous Tree Doctrine.**

If the Court finds that the search and seizure of items at 3808 West Rogers Avenue or 1246 N. Augusta Avenue was unlawful, then any statements Mr. Jones made in connection with the illegal search and seizure should be suppressed.  See Wong Sun v. United States, 371 U.S. 471, 484-85 (1963).  See also United States v. Burke, 605 F. Supp. 2d 688, 704 (D. Md. 2009) (Titus, J.) (suppressing tangible evidence and statements because traffic stop was not supported by reasonable suspicion and arrest was unlawful).

**Conclusion**

WHEREFORE, Mr. Jones respectfully moves this Honorable Court to issue a pre-trial ruling barring the government from admitting any evidence seized from the Third Floor of 3808 West Rogers Avenue, Baltimore, Maryland and from 1246 N. Augusta Avenue, Baltimore, Maryland and barring the admission of Mr. Jones's custodial statements.  In the alternative, Mr. Jones respectfully requests a <u>Franks</u> hearing.

                        Respectfully submitted,

                        JAMES WYDA
                        Federal Public Defender

                            /S/

                        _____

                        DEBORAH L. BOARDMAN, #28655
                        Assistant Federal Public Defender
                        Office of the Federal Public Defender
                        100 South Charles Street
                        Tower II, 9th Floor
                        Baltimore, Maryland 21201
                        Phone: 410-962-3962
                        Fax: 410-962-0872
                        Email: deborah_boardman@fd.org

## **REQUEST FOR HEARING**

Pursuant to Rule 105.6 of the Local Rules of the United States District of Maryland, a

hearing is requested on the defendant's motion.

/S/

_____
DEBORAH L. BOARDMAN, #28655
Assistant Federal Public Defender